UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
KIM ALBRITTON,

               Plaintiff,

               - against -

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-291 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Kim Albritton, proceeding *pro se*, brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision made by the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's claim for Supplemental Security Income ("SSI"). Before the Court is the Commissioner's motion for judgment on the pleadings, which seeks to affirm the SSA's decision to deny benefits.  The Court construes Plaintiff's Complaint as a motion for judgment on the pleadings that seeks to reverse the Commissioner's decision, or alternatively, remand for further administrative proceedings.[1]  The Commissioner seeks affirmation of the decision to deny benefits.  For the reasons that follow, the Court grants Plaintiff's motion and denies the Commissioner's motion.  This case is remanded for further proceedings consistent with this Memorandum and Order.

---

[1] "Where, as here, a social security claimant challenges [her] denial of benefits as a *pro se* plaintiff, precedent in this Circuit indicates that 'even when the plaintiff fails to file a brief, courts still ought [to] examine the record to determine whether the hearing officer applied the correct legal standards and reached a decision based on substantial evidence.'"  *Portalatin v. Comm'r of Soc. Sec.*, No. 18-CV-920 (PKC), 2019 WL 4674785, at *1 n.2 (E.D.N.Y. Sept. 25, 2019) (second alteration in original) (quoting *Vaughn v. Colvin*, 116 F. Supp. 3d 97, 101–02 (N.D.N.Y. 2015)).

**BACKGROUND**

## I.    Procedural History

Plaintiff first applied for Disability Insurance Benefits ("DIB") in 2009, alleging an onset date in 2008; that application was denied.  (*See* Administrative Transcript ("Tr."[2]), Dkt. 9, at 116, 247.)  She then applied for SSI and DIB in December 2012, alleging an onset date of October 2, 2012.  (Tr. at 102, 104.)  Those applications were denied as well.  (Tr. at 99–114, 247.)

On October 26, 2016, Plaintiff filed the application for SSI that is the subject of the instant appeal, claiming that she was disabled as of April 1, 2016,[3] due to degenerative disc disease, left foot surgery, torn muscles in her lower back, type 2 diabetes, and an amputated toe in her left foot. (Tr. at 211, 251.)  Her application was denied on November 16, 2016, and again on reconsideration on March 6, 2017.  (Tr. at 47.)  On November 30, 2018, Plaintiff's counsel below submitted a letter amending Plaintiff's alleged onset date to September 1, 2017.  (Tr. at 237.)  After requesting a hearing, Plaintiff appeared before ALJ Larry J. Stroud via videoconference on January 22, 2019.[4] (Tr. at 47, 84–98.)  On February 14, 2019, the ALJ found that Plaintiff was not disabled.  (Tr. at 47–55.)  The ALJ's decision became final on December 10, 2019, when the SSA Appeals Council denied Plaintiff's request to review that decision.  (Tr. at 1–4.)  This timely appeal followed.[5]  (*See*

---

[2] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript (appearing in the lower right corner of each page) and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

[3] In her Complaint, Plaintiff claims that her disability began on "2009–2019." (Complaint, Dkt. 1, at 1.)

[4] Though pursuing this appeal *pro se*, Plaintiff was represented by counsel at the hearing before the ALJ.  (*See* Tr. at 86.)

[5] According to Title 42, United States Code, Section 405(g),

2

*generally* Complaint ("Compl."), Dkt. 1.)  The Commissioner filed the Administrative Transcript in this case on April 3, 2020 (Dkt. 9), and filed its motion for judgment on the pleadings on June 30, 2020 (Dkt. 11).  In August 2020, Plaintiff requested an extension to respond to the Commissioner's motion, stating that given her *pro se* status she was not sure how to respond.  (Dkt. 12.)  The Court granted her extension; however, Plaintiff failed to file a response by the revised deadline.  (8/12/20 Dkt. Order.)  Though the Court *sua sponte* extended the deadline a following time, Plaintiff again did not file, and the Court deemed briefing closed on January 14, 2021.  (*See* 12/7/20 Dkt. Order; 1/14/21 Dkt. Order.)

## II.    ALJ Stroud's Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry.  The plaintiff bears the burden of proof at the first four steps of the inquiry; the Commissioner bears the burden at the final step.  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  First, the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(i).  If the answer is yes, the plaintiff is not disabled.  *Id.*  If the answer is no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe impairment.  *Id.* § 416.920(a)(4)(ii).  An impairment is severe when it "significantly limit[s] [the

---

[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to [her] of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g).  "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the [plaintiff] makes a reasonable showing to the contrary."  *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)).  Here, the final decision was issued December 10, 2019 (Tr. at 1), and the Complaint was filed on January 21, 2020 (Complaint, Dkt. 1)—i.e., 42 days later—rendering this appeal timely.

plaintiff's] physical or mental ability to do basic work activities." *Id.* § 416.922(a). If the impairment is not severe, then the plaintiff is not disabled. *Id.* § 416.920(a)(4)(ii). In this case, the ALJ found that Plaintiff "ha[d] not engaged in substantial gainful activity since September 30, 2016, the application date." (Tr. at 49.) The ALJ also found that Plaintiff had the following severe impairments: degenerative disc disease and diabetes mellitus. (*Id.*)

Having determined that Plaintiff had satisfied her burden at the first two steps, the ALJ proceeded to the third step and determined that none of Plaintiff's impairments met or medically equaled the severity of any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). (Tr. at 52.) Moving to the fourth step, the ALJ found that Plaintiff maintained the residual functional capacity ("RFC")[6] to perform "medium work as defined in 20 CFR [§] 416.967(c)" except that Plaintiff could only "occasionally climb, balance, stoop, crouch, crawl, and kneel." (*Id.*) The ALJ then proceeded to step five to determine whether Plaintiff—given her RFC, age, education, and work experience—had the capacity to perform other substantial gainful work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(v). The ALJ determined that Plaintiff was able to perform her past relevant work as a cashier/checker and ride attendant/amusement park worker, and concluded that Plaintiff was not disabled within the meaning of the SSA regulations. (Tr. at 55.)

**STANDARD OF REVIEW**

Unsuccessful claimants for SSI and DIB under the Social Security Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). In reviewing a final decision of the Commissioner, the Court's

---

[6] To determine a plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting." 20 C.F.R. § 416.945(a)(1).

4

role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (internal quotation marks, alteration, and citation omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (citation omitted). However, the Court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (per curiam).

## DISCUSSION

In her Complaint, Plaintiff contends that the ALJ's decision was erroneous, not supported by substantial evidence, and/or contrary to the law. Because the Court finds that the ALJ failed to properly develop the record, the Court agrees.

"Before determining whether the Commissioner's conclusions are supported by substantial evidence, . . . '[the Court] must first be satisfied that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the [Social Security] Act.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (third and fourth alterations in the original) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). "An ALJ has an affirmative duty to develop the medical record, even for claimants represented by counsel, and to seek out further

information where evidentiary gaps exist, or where the evidence is inconsistent or contradictory." *Rosado v. Comm'r of Soc. Sec.*, No. 17-CV-2035 (PKC), 2018 WL 2229135, at *5 (E.D.N.Y. May 16, 2018).  When "an ALJ fails to adequately develop the record in reaching a conclusion on a claimant's residual functional capacity, the Court is unable to review whether the ALJ's denial of benefits was based on substantial evidence."  *Alvarez v. Comm'r of Soc. Sec.*, No. 14-CV-3542 (MKB), 2015 WL 5657389, at *18 (E.D.N.Y. Sept. 23, 2015); *see Mantovani v. Astrue*, No. 09-CV-3957 (RRM), 2011 WL 1304148, at *4 (E.D.N.Y. Mar. 31, 2011) ("When an ALJ fails to adequately develop the record . . . the Court need not—indeed, cannot—reach the question of whether the [ALJ's] denial of benefits was based on substantial evidence." (internal quotation marks and citation omitted) (second alteration in original)); *Jones v. Apfel*, 66 F. Supp. 2d 518, 542 (S.D.N.Y. 1999)); *cf. Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.").  An ALJ's "failure to develop the record adequately is an independent ground for vacating the ALJ's decision and remanding the case." *Green v. Astrue*, No. 08-CV-8435 (LAP) (FM), 2012 WL 1414294, at *14 (S.D.N.Y. Apr. 24, 2012) (citing *Moran*, 569 F.3d at 114–15), *report and recommendation adopted*, 2012 WL 3069570 (S.D.N.Y. July 26, 2012); *see also Alvarez*, 2015 WL 5657389, at *14 (quoting same).

The record in this case is sparse.  There are roughly 400 pages of medical records, some of which are repeats, most of which document Plaintiff's trips to various emergency rooms, including multiple hospital admissions over the course of a two-year period.[7]  (*See, e.g.*, Tr. at 408–409,

---

[7] The record also reflects that Plaintiff left the emergency room on several occasions against medical advice.  (*See* Tr. at 408 (noting that Plaintiff left Central Carolina Hospital against medical advice after being admitted on September 17, 2016); Tr. at 486 (noting that Plaintiff left University

521–22.)  Plaintiff did not have a primary care physician during this time, despite being repeatedly told that she needed one.  (*See, e.g.*, Tr. at 355, 409, 445, 487.)  She did not, therefore, have a treating physician to speak to her symptoms.  While one state consultative examiner reviewed Plaintiff's application for disability benefits and another her request for reconsideration, both made their evaluations based on a review of records and neither examined her.  (*See* Tr. at 125–29; 138–42.).

Where a claimant suffers from a "recognized severe impairment," and there is "somewhat credible testimony as to limitations that would preclude past employment," the ALJ is obligated to develop the medical record, including by ordering a consultative examination, to better assess the claimant's limitations.  *Burger v. Astrue*, 282 F. App'x 883, 884–85 (2d Cir. 2008) (summary order).  Here, the ALJ acknowledged that Plaintiff had severe impairments, namely diabetes and degenerative disc disease (Tr. at 49), but discounted the severity of several of Plaintiff's related conditions and/or symptoms based on a lack of treatment records, despite evidence that Plaintiff's scant treatment history was a result of her financial condition.  Plaintiff's lack of insurance and inability to pay for treatment were referenced both in the medical records reviewed by the ALJ and in Plaintiff's hearing testimony.  (*See* Tr. at 90 ("I was supposed to be under medical treatment, I was supposed to go back [to have her feet checked post-surgery], but I have no medical insurance to even go back to get them checked, but I know I got numbness [] going in my pinky toe on both [feet] and it goes into my legs and my hands."); 408 (noting that patient could not afford medications physician prescribed).)

---

of Pittsburgh Medical Center in late July 2017 after being treated inpatient against doctor's recommendations).)

As noted above, the ALJ found Plaintiff's diabetes and degenerative disc disease to be severe impairments, noting that "[t]he record confirms a history of treatment" for both. (Tr. at 49.) However, the ALJ went on to discount the severity of several of Plaintiff's other documented conditions and/or symptoms because of a lack of treatment records. Specifically, Plaintiff testified that after she had her toes amputated due to diabetes, she continued to suffer from numbness stretching to her legs and hands, which tightened her hands and made her unable to hold objects at least three times a day. (Tr. at 90–91.) She also noted that she had vision issues, including diabetic retinopathy, diagnosed after her blood vessels hemorrhaged in 2011. (*Id.* at 91–93.) Plaintiff further stated that she got migraines three times a day, and had to stay in a darkened room. (Tr. at 92.) These conditions were all noted but not explored in her treatment records. (*See* Tr. at 310 ("[Patient] reports recent numbness to the foot."); 506 (noting blurry vision, migraines, back pain, and foot issues); 587 ("Neurological: Positive for numbness.").) The ALJ, however, dismissed Plaintiff's complaints about these conditions as unsupported by the medical record. (*See* Tr. at 51 (noting that while Plaintiff "ha[d] complained [of] migraine headaches[8] and impaired vision[9][,] . . . there are no objective studies confirming the presence of either of these impairments, and exam notes include a lack of documentation of diagnosis or treatment for these alleged impairments"); 52–53 (finding Plaintiff's statements regarding the intensity, persistence, and

---

[8] To the extent the ALJ discounted Plaintiff's reports of migraines based on a lack of objective evidence, that was error, as there "exists no objective clinical test which can corroborate the existence of migraines." *Groff v. Comm'r of Soc. Sec.*, No. 05-CV-54, 2008 WL 4104689, at *7 (N.D.N.Y. Sept. 3, 2008).

[9] The Court notes that, at the hearing, Plaintiff mentioned that her eye issues had been diagnosed in 2011 by "Davis Vision." (Tr. at 93.) While these records presumably predate Plaintiff's claimed onset date, they can nonetheless be consulted. *See Mahmud v. Saul*, No. 19-CV-1666 (TOF), 2020 WL 6866674, at *10 (D. Conn. Nov. 23, 2020). On remand, the ALJ is directed to make an effort to secure all relevant records.

limiting effect of numbness in her feet, legs, and hands to be "not entirely consistent with the medical evidence and other evidence in the record").)

In discounting Plaintiff's symptoms for lack of evidence without acknowledging and correcting for Plaintiff's limited access to treatment, the ALJ failed in his duty to develop the record. *See Brown v. Colvin*, No. 14-CV-1784 (WIG), 2016 WL 2944151, at *4 (D. Conn. May 20, 2016) ("An ALJ should not discount a claimant's credibility based solely on the claimant's inability to afford treatment."). While "there are some claimed impairments that, if credible, would be so painful that even an impoverished claimant would be expected to seek frequent treatment[,]" not all impairments "fall in this category." *Burger*, 282 F. App'x at 884. In *Burger*, the Second Circuit held that where a claimant can afford only "sporadic emergency treatment," claims to suffer from an impairment that "confines her to bed for large parts of every day, but only occasionally triggers acute problems requiring emergency medical treatment," has a documented "severe" impairment, and is unable to pay for medical care, "the ALJ [i]s obliged himself to develop the medical record more fully to ensure an accurate assessment of [the claimant]'s residual functional capacity." *Id.* at 884–85. The Circuit further held that, in light of the claimant's severe impairment and uninsured status, it was error for the ALJ to discredit the claimant's testimony about her limitations on the grounds that she "had sought only 'sporadic' treatment for her conditions and had not offered any physician's assessments of her functional limitations." *Id.* at 884. The Circuit remanded the case, noting that the ALJ should have further developed the record by ordering a consultative examination. *Id.* at 885.

Here, given Plaintiff's poorly controlled diabetes, which resulted in frequent infections (*see* Tr. at 314, 321–22, 371, 408, 458–67, 633–34), and a variety of foot issues, including

osteomyelitis[10] (Tr. at 466–67, 482–86, 491–92) and multiple toe amputations (Tr. at 487, 491–92, 546), the ALJ had a duty to develop the record regarding all her symptoms, including by ordering a consultative examination to assess the effects of Plaintiff's other symptoms. *See Hilsdorf*, 724 F. Supp. 2d at 344 ("If the information obtained from the claimant's medical sources is not sufficient to make a disability determination, or the Commissioner is unable to seek clarification from treating sources, the Commissioner will then ask the claimant to attend one or more consultative evaluations." (citation omitted)); *Burger*, 282 F. App'x at 885 ("Indeed, the relevant regulations specifically authorize the ALJ to pay for a consultative examination where necessary to ensure a developed record." (citation omitted)); *Caban v. Comm'r of Soc. Sec.*, No. 18-CV-929 (PKC), 2019 WL 4254000, at *6 (E.D.N.Y. Sept. 9, 2019) ("A consultative examination is necessary when trying to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow the ALJ to make a determination or decision on a claim. It is considered reversible error for an ALJ not to order a consultative examination when such an examination is necessary for the ALJ to make an informed decision." (internal citations and alterations omitted)).

A consultative examination was warranted in this case not only because of the limited record due to Plaintiff's inability to afford treatment, but also because the existing record has numerous gaps and inconsistencies. For example, the ALJ found that Plaintiff had the "severe" impairment of degenerative disc disease, ostensibly because the "record confirms a history of treatment" for that condition (Tr. at 49), but failed to cite to any particular objective evidence in

---

[10] "Osteomyelitis is an infection in a bone. Infections can reach a bone by traveling through the bloodstream or spreading from nearby tissue. Infections can also begin in the bone itself if an injury exposes the bone to germs." *Warchlok v. Colvin*, No. 16-CV-129 (MAT), 2017 WL 585041, at *3 n.4 (W.D.N.Y. Feb. 14, 2017) (citation omitted).

the record regarding that diagnosis and any limitations it created for Plaintiff. Indeed, the only evidence of a "history of treatment" for degenerative disc disease in the record the Court could find are a few references to back issues made during Plaintiff's various hospital visits. (*See, e.g.*, Tr. at 433, 506, 507, 540, 566.) Rather, the ALJ's degenerative disc disease finding appears to be based on the opinions of consultative physicians Drs. Dakota Cox and Frank Virgili, who reviewed Plaintiff's record but did not examine her. (*See* Tr. at 129, 138–42.) Yet, the ALJ ultimately found that this condition did not limit Plaintiff's ability to perform medium work with some restrictions. (Tr. at 52.) Thus, although the ALJ may have properly determined that Plaintiff suffers from degenerative disc disease, additional development of the record was necessary to ensure that he had an accurate understanding of Plaintiff's limitations as a result of that condition. *See Guillen v. Berryhill*, 697 F. App'x 107, 108–09 (2d Cir. 2017) (summary order) (holding that remand was necessary where "the medical records obtained by the ALJ d[id] not shed any light on [the plaintiff's RFC], and [where] the consulting doctors did not personally evaluate" the plaintiff); *Filocomo v. Chater,* 944 F. Supp. 165, 169 n. 4 (E.D.N.Y. 1996) (finding that a reliance on an RFC assessment "completed by a doctor who never physically examined Plaintiff" would be "unfounded, as the conclusions of a physician who merely reviews a medical file and performs no examination are entitled to little if any weight."). Moreover, the ALJ seems to have entirely ignored the opinions of both Drs. Cox and Virgili that Plaintiff suffered from a "severe" impairment of skin and subcutaneous tissue disorders (*see* Tr. at 125, 138–39, 146), an impairment not addressed elsewhere in the record. *See Calzada v. Astrue*, 753 F. Supp. 2d 250, 274 (S.D.N.Y. 2010) (remanding where the ALJ failed to address or seek additional information regarding a physician's observations that were potentially relevant to the status of the claimant's diabetes and hypertension). It is not even clear that all of the evidence reviewed by Drs. Cox and Virgili is in

11

the instant record. Both evaluations discuss a record from an April 18, 2016 visit by Plaintiff to "INOVA HEALTH SYSTEM," documenting a "differential diagnosis"[11] that "include[d] but [wa]s not limited to bursitis, tenosynovitis, myofascial strain, I radiculopathy, cellulitus, degenerative arthritis, gout, septic joint, tendonitis, vascular occlusion, [and] DVT" (*see* Tr. at 123, 137), but no such summary appears in the record (*see generally* Tr.). The ALJ erred by not developing the record to address these "evidentiary gaps." *See Rosado*, 2018 WL 2229135, at *5.

The ALJ further erred by not developing the record with regard to Plaintiff's mental impairments. He noted that Plaintiff had a history of treatment for mood and personality disorders, but found that they did not have a significant effect on Plaintiff as "there [wa]s no evidence of any treatment for the same since the application date." (Tr. at 51.) "Courts have observed that faulting a person with a diagnosed mental illness for failing to pursue mental health treatment is a questionable practice." *Cornell v. Astrue*, No. 11-CV-1064 (GTS), 2013 WL 286279, at *8 (N.D.N.Y. Jan. 24, 2013) (internal quotation marks and citation omitted). The June 2014 ALJ decision on Plaintiff's prior application found that Plaintiff's severe impairments included, *inter alia*, "mood disorder and personality disorder." (Tr. at 104.) Where a claimant has financial issues with access to treatment and a history of mental health concerns, an ALJ has a duty to develop the record with regard to his or her mental health limitations. *See Kowalski v. Comm'r of Soc. Sec.*, No. 18-CV-1447 (HBS), 2020 WL 1242412, at *3–4 (W.D.N.Y. Mar. 16, 2020). Here, the ALJ failed to obtain a medical opinion regarding Plaintiff's psychological limitations, and failed to even ask Plaintiff about these issues at her hearing. *See Puckett v. Berryhill*, No. 17-CV-5392 (GBD) (KHP), 2018 WL 6061206, at *2, (S.D.N.Y. Nov. 20, 2018) ("The ALJ's duty to develop

---

[11] "[D]ifferential diagnosis[] is a standard scientific technique of identifying the cause of a medical problem." *Perkins v. Origin Medsystems, Inc.*, 299 F. Supp. 2d 45, 57 (D. Conn. 2004).

the administrative record encompasses not only the duty to obtain a claimant's medical records and reports, but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity."); *Jones v. Apfel*, 66 F. Supp. 2d 518, 524 (S.D.N.Y. 1999) (remanding where "[t]he ALJ [] neglected to ask [the claimant] any questions about her psychiatric condition or how it affected her ability to work"). The ALJ thus failed again to appropriately develop the record, this time with respect to Plaintiff's potential mental impairments.

Based on the record before the Court, it appears that this is a case where Plaintiff, in effect, was penalized for not having the means or ability to obtain necessary medical and other treatment for ailments and conditions that landed her in the emergency room multiple times over the course of years, resulting in an inadequate and incomplete record for purposes of determining her eligibility for SSI. On remand, the ALJ is directed to develop the record, including through consultative examination, with regard to Plaintiff's vision, migraines, back and skin issues, asthma, hypertension, and mental health limitations. *See Burger*, 282 F. App'x at 884–85. Additionally, the ALJ should consider the effect of the combination of Plaintiff's various impairments. *See Hernandez v. Astrue*, 814 F. Supp. 2d 168, 185 (E.D.N.Y. 2011).

## CONCLUSION

For the reasons set forth herein, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.   The Commissioner's decision is remanded for further consideration consistent with this Memorandum and Order.   The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*

Pamela K. Chen
United States District Judge

Dated: March 28, 2021
       Brooklyn, New York

14